1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10   KEITH D. VAUGHN,                        CASE NO. C11-2046JLR

11                        Plaintiff,         ORDER GRANTING IN PART
                                             AND DENYING IN PART
12                  v.                       DEFENDANT'S MOTION FOR
                                             SUMMARY JUDGMENT
13   KAREN G. MONTAGUE,

14                        Defendant.

15                          **I.    INTRODUCTION**

16          This matter comes before the court on Defendant Karen Montague's (1) motion

17   for summary judgment against Plaintiff Keith Vaughn (Mot. (Dkt. # 14)); (2) Ms.

18   Montague's motion to strike the declaration of Randolph Wills (Wills Decl. (Dkt. # 18-

19   1)), made pursuant to Local Rule 7(g) (*see* Reply (Dkt. # 20) at 1); and (3) Ms.

20   Montague's motion to strike Mr. Vaughn's response to her motion to strike (2/7/13 Mot.

21   (Dkt. # 24)).  The court has considered the motions, all submissions filed in support and

22

ORDER- 1

opposition thereto, the balance of the record, and the applicable law.  Being fully advised,

the court GRANTS in part and DENIES in part Ms. Montague's motion for summary

judgment (Dkt. # 14), GRANTS in part Ms. Montague's motion to strike the Declaration

of Randolph Wills (Dkt. # 18-1), and DENIES Ms. Montague's motion to strike Mr.

Vaughn's response to her motion to strike (Dkt. # 24).[1]

## II.   FACTUAL AND PROCEDURAL BACKGROUND

This case is a dispute between a brother and sister over the proper administration

and liquidation of their mother's trust.  In 1999, Mary Vaughn created and executed a

revocable living trust agreement ("the Trust Agreement").[2]  (Montague Decl. Ex. 2

(Dkt. # 16-2) at 3.)  The Trust Agreement named Mary Vaughn the initial trustee, but

named Ms. Montague, Mary Vaughn's daughter, the successor trustee upon Mary

Vaughn's death, incapacitation, or resignation.  (*Id.* at 19.)  The Trust Agreement

specified that, upon Mary Vaughn's death, the trustee was to continue to administer the

remainder trust for up to one year after her death, thereafter allocating the remaining trust

estate in equal shares among Mary Vaughn's children.  (*Id.* at 29.)  The Trust Agreement

identified Mary Vaughn's two children as Mr. Vaughn and Ms. Montague.  (*Id.* at 32.)

Although the parties dispute the value of Mary Vaughn's trust, the trust's primary assets

at the time of its creation were bank accounts, annuities, and a house in Bellevue,

_____

[1] No party has requested oral argument, and the court deems this motion appropriate for disposition without it.

[2] Mary Vaughn created the trust in King County, Washington.  (Montague Decl. Ex. 2 at 2.)

1  Washington.  (Mot. at 3-4.)  This family dispute is primarily about the house.  (Mot. at

2  12-15; Resp. (Dkt. # 18) at 3, 5-6.)

3      Mary Vaughn managed her own financial affairs until late 2002 or early 2003,

4  when her failing health necessitated that Ms. Montague take over her financial affairs as

5  successor trustee.  (Montague Decl. at 2-3.)  In 2006, Ms. Montague moved from

6  Arkansas to Seattle and began living in her mother's house, where she still resides.  (*Id.*

7  at 3, 6.)  Mary Vaughn died on May 3, 2010.  (*Id.* at 1.)

8      Mr. Vaughn alleges that Ms. Montague mismanaged trust funds during Mary

9  Vaughn's lifetime and that she failed to equally distribute the remainder trust estate as

10  required by the Trust Agreement.  (Compl. (Dkt. # 1) at 3-4.)  Mr. Vaughn brings claims

11  for (1) breach of fiduciary duty; (2) conversion; and (3) accounting, and asks the court to

12  (4) impose a constructive trust; and (5) grant injunctive relief or a temporary restraining

13  order.  (*Id.* at 5-8.)  Ms. Montague opposes Mr. Vaughn's claims and brings

14  counterclaims for (1) offset and equitable recoupment; (2) constructive trust; (3)

15  promissory estoppel; (4) breach of contract; and (5) declaratory relief validating her

16  actions as trustee and declaring the trust's assets equitably distributed.  (Ans. (Dkt. # 4)

17  at 8-11.)

18      In support of her motion for summary judgment, Ms. Montague provided the

19  following evidence:

20      1. The Declaration of William A. Olson attesting to discovery exhibits.  (Olson

21  Decl. (Dkt. # 15).)

22

ORDER- 3

1      2. Mr. Vaughn's responses to Ms. Montague's first set of interrogatories.  (Olson

2  Decl. Ex. 1 (Dkt. # 15-1).)

3      3. Mr. Olson's correspondence with Mr. Vaughn's attorney contesting Mr.

4  Vaughn's answers to the interrogatory and attaching an accounting of the trust's assets

5  from May 1999 to May 2010.  (Olson Decl. Ex. 2 (Dkt. # 15-2).)

6      4. Ms. Montague's second set of interrogatories and a request to produce the

7  financial records that Mr. Vaughn used to produce his answers to Ms. Montague's first

8  set of interrogatories.  (Olson Decl. Ex. 3 (Dkt. # 15-3).)  Mr. Vaughn never responded to

9  this discovery request.  (Olson Decl. at 2.)

10      5. A copy of Mr. Vaughn's first (and apparently only) discovery request,

11  requesting a copy of the Trust Agreement and Mary Vaughn's will and executed durable

12  power of attorney.  (Olson Decl. Ex. 4 (Dkt. # 15-4).)

13      6.  The Declaration of Karen Montague testifying to, among other things, her

14  management of the trust and the trust's distributions to herself and Mr. Vaughn.  (*See*

15  *generally* Montague Decl. (Dkt. 16-1).)

16      7. An affidavit of Mary Vaughn that her late husband left no will.  (Montague

17  Decl. Ex. 1 (Dkt. # 16-1).)

18      8. A copy of the Trust Agreement.  (Montague Decl. Ex. 2 (Dkt. # 16-2).)

19      9. A letter from Kathy J. Stewart, RN dated November 2, 2009, confirming, by

20  signature of Mary Vaughn, that Mary Vaughn resided at the Aegis Assisted Living

21  Facility in Kirkland, Washington beginning March 7, 2002.  (Montague Decl. Ex. 3

22  (Dkt. # 16-3).)

ORDER- 4

1    10. Correspondence between Michelle Graunke, Esq. and Mary Vaughn

2  confirming the validity of Mary Vaughn's trust, will, durable powers of attorney, and

3  physician's directive.  (Montague Decl. Ex. 4 (Dkt. # 16-4).)

4    11. An accounting of funds expended by the trust to repair the trust's residence in

5  Bellevue, Washington, including cancelled checks.  (Montague Decl. Ex. 5 (Dkt. # 16-

6  5).)

7    12. An accounting of all funds disbursed by the trust to Mr. Vaughn between

8  February 1, 2007 and January 16, 2012, including copies of credit card invoices and

9  cancelled checks.  (Montague Decl. Ex. 6 (Dkt. # 16-6).)

10    13. Notes prepared by Mr. Vaughn and Ms. Montague in 2007 summing all funds

11  disbursed by the trust to Mr. Vaughn while Mary Vaughn was managing her own

12  financial affairs and/or was the trustee of her trust (October 6, 1997 to January 2, 2001).

13  (Montague Decl. Ex. 7 (Dkt. # 16-7).)

14    14. Promissory notes between Mary Vaughn's late husband, William Vaughn, and

15  Mr. Vaughn, evidencing Mr. Vaughn's debt to William Vaughn of $10,000, along with a

16  letter from Ms. Montague noting accrued interest on the notes of approximately $6,400 as

17  of 2007.  (Montague Decl. Ex. 8 (Dkt. # 16-8).)

18    15. Transcripts and audio recordings of voice mail messages from Mr. Vaughn to

19  Ms. Montague wherein Mr. Vaughn says "You can have the fuckin' house. I don't give a

20  shit."  (Montague Decl. Ex. 9 (Dkt. # 16-9).)

21

22

ORDER- 5

16. A copy of all accounting for the trust between November 1, 2002 to May 3, 2010 (Mary Vaughn's date of death), including corresponding bank statements and other records.  (Montague Decl. Ex. 10 (Dkt. ## 16-10; 16-11).)

17.  A copy of all accounting for the trust between May 3, 2010 and February 16, 2012, including corresponding bank statements and other records.  (Montague Decl. Ex. 11 (Dkt. ## 16-12; 16-13).)

18. Ms. Montague's reconciliation of the trust's accounting from May 1999 to November 2002, during which Mary Vaughn was the sole trustee and manager of the trust's financial accounts.  (Montague Decl. Ex. 12 (Dkt. # 16-14).)

19. A copy of all accounting, including cancelled checks and bank statements, related to Ms. Montague's use of her own personal funds to renovate the trust's residence in Bellevue, Washington from 2006 to 2007.  (Montague Decl. Ex. 13 (Dkt. # 16-15).)

20. Cascade Appraisal, L.L.C.'s Uniform Residential Appraisal Report of the trust's residence in Bellevue, Washington as of May 3, 2010 (Mary Vaughn's date of death).  (Montague Decl. Ex. 14 (Dkt. # 16-16).)

21. A copy of all accounting, including cancelled checks and bank statements, for payments by Ms. Montague, from her personal funds, to fund Mary Vaughn's expenses and documenting payments to Mr. Vaughn.  (Montague Decl. Ex. 15 (Dkt. # 16-17).)

In his opposition to the motion for summary judgment, Mr. Vaughn provides only one piece of evidence:  the Declaration of Randolph Wills, a third party retained by Mr. Vaughn's counsel "to analyze the financial records related to the management of the Mary Vaughn Trust."  (Wills Decl. at 1.)

# III.   DISCUSSION

## A.   Ms. Montague's Motion to Strike the Wills Declaration

Ms. Montague moves to strike the Declaration of Randolph Wills.  (*See* Reply at 11-12.)  Ms. Montague argues that Mr. Wills is not qualified to testify as an expert on financial and accounting matters, that his testimony is not helpful to the court, and that Mr. Vaughn failed to disclose his expert's testimony as required by Federal Rule of Evidence 26(a)(2).  (*Id.* at 11-12.)  In response, Mr. Vaughn argues that Mr. Wills is qualified, that Mr. Vaughn is unable to hire a Certified Public Accountant due to his limited financial means, and that Mr. Wills will not necessarily be used as a trial witness. (*See generally* 2/6/13 Resp. (Dkt. # 23).)[3]

Even if the court assumes that Mr. Wills is qualified and that his testimony is otherwise admissible, it would strike the paragraphs discussed below.  The court, however, declines to decide whether the remainder of the motion should be struck, as adjudication of the remainder of Ms. Montague's motion to strike does not affect the outcome of her motion for summary judgment.

---

[3] Ms. Montague also moves to strike Mr. Vaughn's 2/16/13 response to her motion to strike.  (2/7/13 Mot. (Dkt. # 24).)  The court DENIES this motion.  The local rules do not expressly prohibit filing a response to a motion to strike contained in a reply brief.  *See* LCR 7(g).  Fairness requires that Mr. Vaughn have the opportunity to respond to the motion.  Such a response does not prejudice Ms. Montague because Ms. Montague had the opportunity to spell out reasons why the declaration should be struck in her reply brief and an opportunity to reply to Mr. Vaughn's response to the motion to strike.  (Reply. at 19-20; 2/7/13 Mot.)  Ms. Montague correctly notes that Mr. Vaughn's response to the motion to strike is not limited to Mr. Wills' declaration.  (2/7/13 Mot. at 2.)  Accordingly, the court does not take into consideration any statements contained in Mr. Vaughn's response to the motion to strike not pertaining to Mr. Wills' declaration.

1    The court makes an initial determination of whether expert testimony is relevant

2    and reliable.  *Wagner v. Cnty. of Maricopa*, 701 F.3d 583, 589 (9th Cir. 2012).

3    Relevancy requires that the testimony "assist the trier of fact to understand the evidence

4    or to determine a fact in issue."  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591

5    (1993) (quoting Fed. R. Evid. 702); *see also United States v. Downing*, 753 F.2d 1224,

6    1242 (3d Cir. 1985) ("An additional consideration under Rule 702—and another aspect

7    of relevancy—is whether expert testimony proffered in the case is sufficiently tied to the

8    facts of the case that it will aid the jury in resolving a factual dispute.").  The test for

9    reliability is flexible and depends on the discipline involved.  *Wagner*, 701 F.3d at 590.

10   The expert's report must rest on a "reliable basis in the knowledge and experience of [the

11   expert's] discipline."  *Daubert*, 509 U.S. at 592.

12   Applying these standards, the court STRIKES paragraph J of Mr. Wills'

13   declaration, stating the purported value of the trust's house.  (Wills Decl. at 4.)  Mr. Wills

14   does not assert that he is a licensed appraiser, nor does he give any indication that he has

15   any expertise in real estate.  The court is not satisfied that his conclusions about the value

16   of the trust's home are reliable.  Further, deriving the purported value of the home from

17   the website Zillow.com does not assist the trier of fact, nor require any particular

18   expertise.  (*Id.* at 4, n.1.)

19   The court also STRIKES paragraphs I and N of Mr. Wills' declaration. (*Id.* at 3,

20   5).  Mr. Wills' conclusion that Ms. Montague disbursed the trust's home to herself "for

21   her own sole use" is not based on his financial analysis experience or his review of the

22   financial records in the case, but rather on his speculative conclusions about Ms.

1    Montague's motives.  *See Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir.

2    1996) (stating that a court should not include expert testimony that is "speculative or

3    conjectural"); *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in

4    either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion

5    evidence that is connected to existing data only by the *ipse dixit* of the expert.").  Mr.

6    Wills' statement that Ms. Montague wrote checks that are not accounted for, but "are still

7    being researched," is similarly speculative.  Discovery is closed.  Mr. Wills' statement

8    offers no help to the trier of fact and is mere insinuation, not expert testimony.

9         The court need not decide whether to strike the remainder of Mr. Wills'

10   declaration because the court grants Ms. Montague's motion for summary judgment as to

11   all of Mr. Vaughn's claims, even considering the remainder of Mr. Wills' declaration as

12   admissible evidence.  Any potential prejudice to Ms. Montague caused by admitting the

13   remainder of the declaration is therefore moot.

14   **B.    Summary Judgment Standard**

15        Summary judgment is properly granted when there is no genuine disputed issues

16   of material fact, and when, viewing the evidence most favorably to the non-moving party,

17   the movant is entitled to prevail as a matter of law.  Fed. R. Civ. P. 56; *Celotex Corp. v.*

18   *Catrett*, 477 U.S. 317, 322-23 (1986).  The moving party bears the burden of showing

19   that there is no material factual dispute.  *Id.* at 323-25.  The court must regard as true the

20   opposing party's evidence, if supported by affidavits or other evidentiary material.  *Id.* at

21   324.  The court must draw all reasonable inferences in favor of the party against whom

22   summary judgment is sought.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

1  U.S. 574, 587 (1986); *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551,

2  1558 (9th Cir. 1991).  Material facts which would preclude entry of summary judgment

3  are those which, under applicable substantive law, may affect the outcome of the case.

4  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The substantive law will

5  identify which facts are material.  *Id.*

6        Where the moving party does not bear the burden of proof on an issue at trial, the

7  moving party may discharge its burden by "pointing out 'that there is an absence of

8  evidence to support the nonmoving party's case.'"  *Devereaux v. Abbey*, 263 F.3d 1070,

9  1076 (9th Cir. 2001) (quoting *Celotex Corp*, 477 U.S. at 325).  If the moving party

10  discharges its burden by showing an absence of evidence to support an essential element

11  of a claim or defense, it is not required to produce evidence showing the absence of a

12  material fact on such issues, or to support its motion with evidence negating the non-

13  moving party's claim.  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d

14  1099, 1106 (9th Cir. 2000).  Alternatively, the moving party may produce evidence

15  negating an essential element of the non-moving party's case.  *Id.*  If the moving party

16  discharges its burden by negating an essential element of the non-moving party's claim or

17  defense, it must produce affirmative evidence of such negation.  *Id.* at 1105.

18        Once the moving party carries its initial burden, the burden then shifts to the non-

19  moving party to produce "specific evidence, through affidavits or admissible discovery

20  material, to show that the dispute exists."  *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404,

21  1409 (9th Cir. 1991).  The non-moving party cannot meet its burden merely by making

22  assertions in its legal memoranda; rather, it must point to specific evidence in the record

1    demonstrating a genuine issue for trial.  *Celotex Corp.*, 477 U.S. at 324; *Nissan Fire &*

2    *Marine Ins. Co., Ltd.*, 210 F.3d at 1107 (holding that, once the moving party meets its

3    burden, the nonmoving party is "obliged to produce evidence in response"); *S. A.*

4    *Empresa De Viacao Aerea Rio Grandense (Varig Airlines) v. Walter Kidde & Co., Inc.*,

5    690 F.2d 1235, 1238 (9th Cir. 1982) ("[A] party cannot manufacture a genuine issue of

6    material fact merely by making assertions in its legal memoranda.").  Summary judgment

7    is appropriate where the non-moving party fails to provide any proof of an essential

8    element of its case for which it will bear the burden at trial.  *Celotex Corp.*, 477 U.S. at

9    323 ("[A] complete failure of proof concerning an essential element of the nonmoving

10   party's case necessarily renders all other facts immaterial.").

11   **C.    Mr. Vaughn's Causes of Action**

12       Mr. Vaughn's causes of action all fail because there is a "complete failure of

13   proof" as to the essential facts of his claims. *Celotex Corp.*, 477 U.S. at 323.  As Mr.

14   Vaughn presents almost no proof of his claims, the court GRANTS summary judgment in

15   favor of Ms. Montague as to all of Mr. Vaughn's causes of action.

16       **1. Breach of Fiduciary Duty**

17       Mr. Vaughn provides no proof that Ms. Montague breached her fiduciary duty as

18   trustee.  "A trustee, as a fiduciary, owes beneficiaries the 'highest degree of good faith,

19   care loyalty and integrity.'" *Cook v. Brateng*, 262 P.3d 1228, 1231 (Wash. Ct. App.

20   2010) (quoting *Esmieu v. Schrag*, 563 P.2d 203 (Wash. 1977)).  A trustee's fiduciary

21   duty is "that degree of care, skill and diligence that an ordinary prudent [person]

22   exercises in similar affairs." *Id.* at 1231.

1    A trustee's power comes from the express provisions of the trust agreement.

2    *Monroe v. Winn*, 133 P.2d 952, 956 (Wash. 1943).  The trust document controls even if

3    its terms conflict with statutory obligations.  RCW 11.97.010.  Where the instrument

4    vests discretion in the trustee, the court will not interfere with that discretion and only

5    reviews for abuse of that discretion.  *Austin v. U.S. Bank of Wash.*, 869 P.2d 404, 410

6    (Wash. 1994).  A trustee abuses his or her discretion only when they act "arbitrarily, in

7    bad faith, maliciously, or fraudulently."  *Id.*

8    Here, the record contains no evidence that Ms. Montague abused the considerable

9    discretion the Trust Agreement vested in her.  *See Occidental Life Ins. Co. of Cal. v.*

10   *Blume*, 399 P.2d 76, 79 (Wash. 1965) (upholding summary judgment against trust

11   beneficiaries claiming bad faith where the trustee's actions were "well within the bounds

12   of reasonable judgment").  The record indicates that Ms. Montague administered the trust

13   consistent with the terms of the trust agreement, and Mr. Vaughn has submitted no

14   evidence to the contrary.  *Id.* (holding that the trustee did not breach its fiduciary duty

15   when its actions were consistent with the trust instrument).

16   Mr. Vaughn contends that Ms. Montague abused her discretion by moving into the

17   trust's home in 2006, "depriv[ing] the trust of the value of the family home."  (Resp. at

18   9).  He argues that, instead of selling the home, Ms. Montague abused her discretion by

19   borrowing money to pay for her mother's care, which cost the trust additional interest.

20   (*Id.*)  Mr. Vaughn's argument amounts to second guessing Ms. Montague's discretionary

21   decisions as trustee as to management of the trust estate.  The Trust Agreement vested

22   Ms. Montague with the "rights, powers, and privileges which an absolute owner of the

ORDER- 12

1  same property would have." (Montague Decl. Ex. 2 at 7.)  Further, Ms. Montague, as

2  trustee had the "sole and absolute discretion and judgment" as to whether selling any of

3  the trust's property was in the best interests of the trust. (*Id.* at 9.)  Mr. Vaughn does not

4  provide any evidence contradicting Ms. Montague's statement that she obtained a line of

5  credit on the house in 2009 because the trust's cash shortage jeopardized Mary Vaughn's

6  care. (*Id.* at 5.)  Nor does he contradict Ms. Montague's statement that the trust's

7  distributions to Mr. Vaughn caused the cash shortage in the first place. (*Id.*)  Given Ms.

8  Montague's broad discretionary powers to administer the trust in her mother's best

9  interests, the court will not second guess Ms. Montague's decision to obtain a line of

10  credit to obtain cash to pay for her mother's care rather than sell the home.  Such a

11  decision is not, as a matter of law, arbitrary, malicious, fraudulent, or in bad faith.

12      Mr. Vaughn relies on the Washington Court of Appeals' decision in *Casterline v.*

13  *Roberts* for his contention that Ms. Montague's use of the trust's home was an abuse of

14  discretion, but *Casterline* is inapposite. (*See* Resp. at 8-9.)  In *Casterline*, the trustee

15  transferred funds from her mother's trust to build a home held in her own name then

16  fraudulently transferred the home when her mother's guardian began an investigation.

17  *Casterline v. Roberts*, 284 P.3d 743, 754 (Wash. Ct. App. 2012).  Here, there was no

18  transfer of funds from the trust to pay for property held in Ms. Montague's name.  Ms.

19  Montague simply moved into and maintained the trust's house, which was well within

20  her power under the terms of the Trust Agreement to care for the trust's property as an

21

22

ORDER- 13

absolute owner would.[4]  (Montague Decl. Ex. 2 at 7 (granting the trustee the "rights,

powers, and privileges which an absolute owner of the same property would have")).)

Ms. Montague used trust funds to repair the house, which is also consistent with the

rights of an absolute owner.  (*Id.*)  Further, Ms. Montague did not transfer the property

into her own name in 2006, let alone fraudulently transfer it to escape creditors.

(Montague Decl. at 3.)

        The Washington Court of Appeals' decision in *Cook v. Brateng* is instructive.  In

*Cook*, as here, the trustor set up a revocable living trust naming his daughter as successor

trustee, giving her "sole and absolute discretion" over the trust.  *Cook*, 262 P.3d at 1230,

1233.  The trustee's brother sued her, claiming she breached her fiduciary duty by failing

to inform him that she was repairing the home and deferring her own compensation as

trustee, rather than encumbering the house with debt to care for their father.  *Id.* at 1232.

        The Court of Appeals reversed the trial court's decision and held that the trustee

did not breach her fiduciary duty by failing to inform her brother of her decisions

regarding the trust's home.  *Id.* at 1229-30.  In so holding, the court reasoned that the

trustee's duty to provide an accounting and details regarding the trust's spending ran to

the trustor, not to her brother, who was not an income beneficiary.  *Id.* at 1232.  The

trustee's only duty to her brother was to inform him of matters that would "significantly

---

        [4] It is not in serious dispute that an absolute owner of property would have the power to
live in that property or to make repairs. "Absolute ownership" includes "the right to hold,
possess, and enjoy to the exclusion of any other individual in the universe."  *Great Northern Ry.
Co. v. Wash. Elec. Co.*, 86 P.2d 208, 217 (Wash. 1939).

affect his [remainder] interests." *Id.* at 1233.  Further, the brother could not say the trustee breached that duty when, as here, the brother was on notice that the trustor's ailing health was likely to consume most of the trust's assets.  The trustee's actions, including choosing not to encumber the trust's house, were "routine practice[s] to fulfill the trust's primary purpose," which was to provide for the trustor's care.  *Id.*

As *Cook* instructs, Ms. Montague's only duty to Mr. Vaughn during Mary Vaughn's lifetime was to inform him of any activities that would significantly affect his remainder interest.  Ms. Montague did not breach that duty.  Mr. Vaughn provides no evidence that Ms. Montague conducted anything other than "routine activities to fulfill the primary purpose of the trust." *Cook*, 262 P.3d at 1233.

Contrary to Mr. Vaughn's contentions, Ms. Montague did not breach any duty to him.  She had no duty to give an accounting to Mr. Vaughn. *Id.* at 1232.  She had no duty to consult with or inform Mr. Vaughn about her activities related to providing for Mary Vaughn's care.  (*See* Montague Decl. Ex. 2 at 6 (noting that one of the primary purposes of the trust is to "provide for the Trustor's care and welfare during her lifetime").)  She had no duty to inform Mr. Vaughn that she was living in the trust's house.  (*See id.* (stating that another primary purpose of the trust is to "provide for the management of her property").)  She had no duty to inform Mr. Vaughn that she was making repairs or remodeling the trust's home.  (*See id.* at 9 (granting the trustee the power to "make all repairs and improvements" to the trust's real property in her "sole and absolute discretion").)  She had no duty to inform Mr. Vaughn that she was encumbering the home to pay for her mother's care.  (*See id.* at 14 (granting the trustee sole discretion

1  to encumber any asset in order to "secure financing from any source and for any purpose

2  deemed appropriate by the Trustee in Trustee's sole and absolute discretion").)   And

3  finally, she had no duty to inform, let alone consult with, Mr. Vaughn regarding her

4  decision to not sell the house.  (*See id.* at 7-8 (granting the trustee the sole discretionary

5  power to manage the trust's property "without the necessity of obtaining the consent or

6  permission of any person interested herein").)

7          Despite having the burden of proof, Mr. Vaughn provides no evidence for his

8  assertion that Ms. Montague "[took] the family home for herself in 2006."  (Resp. at 9.)

9  Mr. Vaughn produced only one piece of evidence, Mr. Wills' Declaration.  (*See generally*

10  Wills Decl.)  Mr. Wills' declaration provides no evidence that Ms. Montague abused her

11  discretion by moving into the trust's house.  Indeed, Mr. Vaughn does not dispute that he

12  agreed that she should live in the home.  (Montague Decl. at 3-4.)

13          Not only has Mr. Vaughn failed to provide any evidence that Ms. Montague acted

14  in bad faith, all of the evidence in the record points to Ms. Montague's good faith efforts

15  to maintain the trust for the benefit of her mother in a manner consistent with the Trust

16  Agreement.  The court, therefore, GRANTS summary judgment in favor of Ms.

17  Montague as to Mr. Vaughn's breach of fiduciary duty claim.

18  **2. Conversion**

19          Mr. Vaughn's claim for conversion fails as a matter of law.  "A conversion is the

20  act of willfully interfering with any chattel, without lawful justification, whereby any

21  person entitled thereto is deprived of the possession of it."  *Pub. Util. Dist. No. 1 of Lewis*

22  *Cnty. v. Wash. Pub. Power Supply Sys.*, 705 P.2d 1195, 1211 (Wash. 1985).  The plaintiff

1   must have a property interest in the converted chattel. *Davenport v. Wash. Educ. Ass'n*,

2   197 P.3d 686, 695 (Wash. Ct. App. 2008).  In Washington, conversion claims are subject

3   to a three-year statute of limitations.  RCW 4.16.080(2); *Crisman v. Crisman*, 931 P.2d

4   163, 165 (Wash Ct. App. 1997).  The limitation period begins to run when the plaintiff's

5   cause of action accrues.  *Crisman*, 931 P.2d at 165.  A cause of action accrues when the

6   plaintiff suffers the alleged injury.  *Id.*

7        Mr. Vaughn alleges that Ms. Montague converted the trust's assets for her own

8   benefit.  (*See* Compl. ¶¶ 26-30; Resp. at 8).  Mr. Vaughn's only property interest in the

9   trust is his remainder interest.  (*See* Montague Decl. Ex. 2 at 29.)  Mr. Vaughn, therefore,

10  must prove that Ms. Montague, without lawful justification, deprived Mr. Vaughn of his

11  remainder interest.  *See Davenport*, 197 P.3d at 695 (stating that conversion requires that

12  the defendant deprived the plaintiff of the plaintiff's chattel without lawful justification).

13  The only argument Mr. Vaughn puts forth to assert his conversion claim is that (1) Ms.

14  Montague converted the trust's home to her exclusive use in 2006; and (2) that by

15  converting the house, Ms. Montague failed to provide Mr. Vaughn with an equal share of

16  the remainder estate.  (Wills Decl. at 3.)  Mr. Vaughn's conversion claim fails as a matter

17  of law for two reasons.

18       First, Mr. Vaughn's conversion claim is barred by Washington's statute of

19  limitations.  He argues that Ms. Montague allegedly converted the family home in 2006,

20  thereby depriving him of his remainder estate.  (*Id.*)  Taking that statement as true, Mr.

21  Vaughn's injury occurred in 2006.  Mr. Vaughn cannot assert equitable tolling, because

22  he does not dispute that he knew Ms. Montague intended to move into the trust's home in

1   2006.  *See Chrisman*, 931 P.2d at 166 (stating that a plaintiff's claim is not tolled if they

2   know or, through the exercise of due diligence, should have known all the facts necessary

3   to establish a legal claim).  Thus, Washington's statute of limitation bars Mr. Vaughn's

4   claim.

5           Second, Mr. Vaughn provides no evidence that Ms. Montague converted the

6   trust's home without lawful justification.  As discussed *supra*, the Trust Agreement

7   conferred vast discretion to Ms. Montague to manage the trust's home as an absolute

8   owner would.  (Montague Decl. Ex. 2 at 7 (granting the trustee the "rights, powers, and

9   privileges which an absolute owner of the same property would have").)  Such absolute

10  ownership included the right to move into the home, make repairs and improvements, pay

11  taxes and utilities, and encumber the asset for the benefit of the trust.  Further, Mr.

12  Vaughn provides no evidence that Ms. Montague owns the home; in fact, undisputed

13  evidence shows that the trust owns the home.  (Montague Decl. Ex. 11.)  In short, Ms.

14  Montague did not convert the home, but even if she did, the Trust Agreement gave Ms.

15  Montague lawful authority to do so.

16          For the foregoing reasons, the court GRANTS summary judgment in favor of Ms.

17  Montague as to Mr. Vaughn's conversion claim.[5]

18

19  _____

20          [5] Because the court finds that Ms. Montague did not breach her fiduciary duty, convert
    Mr. Vaughn's property, or unjustly enrich herself, the court declines to impose a constructive

21  trust.  *See Consulting Overseas Mgmt., Ltd. v. Shtikel*, 18 P.3d 1144, 1148-49 (Wash. Ct. App.
    2001) (noting that a constructive trust is an equitable remedy to be imposed where the defendant

22  obtains the property of another in bad faith, or through fraud, abuse of confidence, or unjust
    enrichment).  For the same reasons, the Court declines to impose a temporary restraining order or

**3. Accounting**

To compel an accounting, a plaintiff must show (1) that a fiduciary relationship exists between the parties; (2) that the plaintiff has demanded an accounting from the defendant; and (3) that the defendant refused. *State v. Taylor*, 362 P.2d 247, 253 (Wash. 1961) (citing *Seattle Nat'l Bank v. Sch. Dist. No. 40*, 55 P. 317, 319 (Wash. 1898)).  Mr. Vaughn does not provide any evidence that he properly demanded an accounting, or that Ms. Montague refused to provide an accounting.  In any event, the claim is moot because Ms. Montague, in fact, provided Mr. Vaughn with an extensive accounting of the trust as part of the discovery process.  (*See* Wills Decl. at 2; Montague Decl. Ex. 5-8, 10-13, 15.) Accordingly, the court GRANTS summary judgment in favor of Ms. Montague as to Mr. Vaughn's accounting claim.

Mr. Vaughn's claims for breach of fiduciary duty, conversion, accounting, constructive trust, and injunctive relief all fail as a matter of law.  The court, therefore, GRANTS summary judgment in favor of Ms. Montague as to all of Mr. Vaughn's claims. The court now turns to Ms. Montague's counterclaims against Mr. Vaughn.

**D.    Ms. Montague's Counterclaims**

Ms. Montague brings five counterclaims against Mr. Vaughn.  (*See* Ans. at 8-11.) In her motion for summary judgment, Ms. Montague distills these claims down to three requests:  (1) that the court order the trust to distribute the trust's home to her; (2) that the court order the trust to distribute $41,640.47 of its remaining cash to Ms. Montague; and

grant injunctive relief to Mr. Vaughn.  The court GRANTS summary judgment in favor of Ms. Montague as to Mr. Vaughn's requests for constructive trust and injunctive relief.

1  (3) that the court declare that Mr. Vaughn breached the "No Contest Clause" of the Trust

2  Agreement.  (*See* Mot. at 16-18.)  Because the court lacks subject matter jurisdiction over

3  probate matters, the court DENIES Ms. Montague's motion for summary judgment as to

4  her counterclaims and DISMISSES those counterclaims without prejudice.

5      In *Marshall v. Marshall*, the Supreme Court recognized a "probate exception" to

6  federal subject matter jurisdiction.  547 U.S. 293, 308 (2006).  "The probate exception

7  reserves to state courts the probate or annulment of a will and the administration of a

8  decedent's estate."  *Id.* at 311-12.[6]  The court, therefore, lacks the authority to settle

9  Mary Vaughn's estate.[7]

10     Ms. Montague's counterclaims all relate to settlement of Mary Vaughn's estate.

11  Under the probate exception, this court cannot order distribution of the trust's assets, nor

12  declare the estate settled.  *Cf. McGovern v. Braun*, No. 12-672-PHX-GMS, 2012 WL

13  1946600, at *3 (D. Ariz. May 30, 2012) (remanding case to state court where the

14  petitioner sought to have a federal court determine who should administer the estate, what

15  property the estate owned, and to whom the estate should distribute property).  Similarly,

16  _____

17      [6] The exception does not bar federal courts from adjudicating "matters outside those
confines and otherwise within federal jurisdiction."  *Marshall*, 547 U.S. at 312.  The *Marshall*

18  Court explicitly held that the probate exception does not apply to "widely recognized" torts.  *Id.*
(noting that the appellant alleged the "widely recognized" tort of tortuous interference).  Thus,
the court has subject matter jurisdiction under *Marshall* to hear Mr. Vaughn's tort claims.

19      [7] Courts are not uniform in applying the probate exception to *inter vivos* trusts and the

20  Ninth Circuit has not weighed in.  *See Chabot v. Chabot*, No. 4:11-CV-217-BLW, 2011 WL
5520927, at *4 n.2 (D. Idaho Nov. 14, 2011) (collecting cases).  The court agrees with the

21  *Chabot* court's well-reasoned conclusion that "*Marshall* implicitly held that the probate
exception analysis applies to trusts that act as will substitutes."  *Id.* (applying probate exception

22  analysis to claims involving *inter vivos* trust).  For this reason, the court follows *Chabot* and
applies the probate exception to the trust in this case.

1  Ms. Montague's claim that Mr. Vaughn breached the Trust Agreement's no contest

2  clause is the equivalent of a will contest and related to the settlement of Mary Vaughn's

3  estate. *See generally In re Chappell's Estate*, 221 P. 336 (Wash. 1923) (referring

4  throughout the opinion to the appellee's claim that the appellant breached the no contest

5  clause as a "will contest"); *see also In re Estate of Mumby*, 982 P.2d 1219, 1223 (Wash.

6  Ct. App. 1999) (noting that the trial court applied a trust agreement's "no contest" clause

7  in order to invalidate a beneficiary's claim).

8                                    **IV.   CONCLUSION**

9          In the light of the foregoing, the court GRANTS in part and DENIES in part Ms.

10  Montague's motion for summary judgment (Dkt. # 14).  The court GRANTS summary

11  judgment in favor of Ms. Montague as to all of Mr. Vaughn's claims.  The court DENIES

12  summary judgment as to all of Ms. Montague's counterclaims.  Because the court lacks

13  subject matter jurisdiction over Ms. Montague's counterclaims, the court DISMISSES

14  them WITHOUT PREJUDICE.

15  //

16  //

17  //

18  //

19  //

20  //

21  //

22  //

ORDER- 21

1    As explained herein, the court also GRANTS in part Ms. Montague's motion to

2 strike the declaration of Randolph Wills (Dkt. # 18-1) and declines to consider the

3 remainder of the declaration.  The court DENIES Ms. Montague's Motion to Strike Mr.

4 Vaughn's response to her motion to strike (Dkt. # 24).

5    Dated this 14th day of February, 2013.

6

7

8    _____

     JAMES L. ROBART
9    United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER- 22